**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| ROSE HENDRICKSON | ) | CASE NO. 1:21-cv-336-MRB |
| 6499 Prairie Rd. | ) | |
| Sabina, OH 45169 | ) | JUDGE: BARRETT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM SERVICES, LLC | ) | |
| d/b/a Amazon Air | ) | |
| 150 Ruane Dr. | ) | |
| Wilmington, Ohio 45177 | ) | **FIRST AMENDED COMPLAINT** |
| | ) | **FOR DAMAGES AND** |
| | ) | **INJUNCTIVE RELIEF** |
| **Serve Also:** | ) | |
| AMAZON.COM SERVICES, LLC | ) | **JURY DEMAND ENDORSED** |
| d/b/a Amazon Air | ) | **HEREIN** |
| c/o Corporation Service Company | ) | |
| 50 W Broad Street Ste. 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff ROSE HENDRICKSON by and through undersigned counsel, as her First

Amended Complaint against the Defendant, states and avers the following:

**PARTIES, JURISDICTION, & VENUE**

1. Hendrickson is a resident of the city of Sabina, Clinton County, state of Ohio.

2. Defendant AMAZON.COM SERVICES, LLC ("Amazon") is a foreign-incorporated
   company that conducts business within the state of Ohio. The relevant location of the
   events and omissions of this Complaint took place was at Amazon's location at 150
   Ruane Dr., Wilmington, Ohio 45177.

3. Amazon is, and was at all times hereinafter mentioned, Hendrickson's employer within
   the meaning of R.C. § 4101 et seq. and R.C. § 4112.01(A)(2).

4.  Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (2), and/or (3).

5.  Venue is proper pursuant to Civ. R. 3(B)(1), (2), (3), and/or (6).

6.  This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## **FACTS**

7.  Hendrickson is a former employee of Defendant.

8.  At all times noted herein, Hendrickson was qualified for her position with Defendant and could fully perform the essential functions of her job, with or without a reasonable accommodation.

9.  Hendrickson is disabled due to an injury in the workplace with Amazon (*infra*), and thus is in a protected class for disability.

10. Alternatively, Amazon began perceiving Hendrickson as disabled after her injury (*infra*), placing her in the protected class.

11. Hendrickson is age 58 and thus is in a protected class for her age.

12. To Hendrickson's knowledge, she was one of the oldest employees in her position. All others named herein are outside her protected age class, or at least substantially younger than her, upon information and belief.

13. Hendrickson worked for Amazon as a Tug Driver and Ramp Crew from April 29, 2018 until Amazon terminated Hendrickson's employment on October 24, 2020.

14. Hendrickson's early employment was overall positive.

15. Hendrickson worked multiple roles for Amazon during her early employment, and eventually was moved specifically to the Air Transport division as a tug driver.

16. By in or around October 2019, Hendrickson was working full-time as a tug driver.

17. On or about October 25, 2019, Hendrickson was working with a new trainee who was attempting to get a temporary tug driver license.

18. While Hendrickson was directly behind the tug setting its lock, a ramp crew member ushered the trainee forward.

19. As the tug drove forward, Hendrickson became pinned between two pieces of equipment.

20. After Hendrickson was pinned, a universal loading device fell onto Hendrickson's leg, badly injuring it.

21. Amazon then took Hendrickson to the medical bay for evaluation.

22. Hendrickson then provided a written statement to Amazon regarding what had happened.

23. The next day, Hendrickson's leg looked terrible, so she went to her doctor, who then diagnosed her with a torn ACL, a torn meniscus, hairline fractures in her kneecap, and a sprained tendon.

24. Hendrickson then filed a Worker's Compensation claim for the injury.

25. Hendrickson was then offer work for resulting medical reasons from October 25, 2019 until she returned on or about May 13, 2020.

26. Hendrickson remained in contact with Amazon as required during her time out.

27. By the time Hendrickson returned to work, there was a nearly-entirely new crew at the site.

28. At her return, Hendrickson was given a few more of training to get back into the tug driving swing.

29. Over the next months, Hendrickson's leg continued to be a problem at work (and throughout her life), but it did not interfere with her ability to perform her essential job functions.

30. In or around late September/early October 2020, Hendrickson was dispatched to Plane 23 at Gate 23.

31. That day, there were visibility problems caused by intemperate weather.

32. Hendrickson drove her tug to the designated spot and lined herself with the K-Loader. She then waited for the marshal to instruct her to continue.

33. Josh (LNU, area manager, late 30s) approached Hendrick's tug, and told her to wait on the second wing-locker.

34. Hendrickson did not see the relevant beacon light due to the inclement weather.

35. Though John (LNU) called this a "coach-and-go" moment, but told Hendrickson that her tug license would be revoked until she was re-trained.

36. Hendrickson complained that others who had made minor mistakes and were not injured as she was had not had their licenses revoked. This was a protected complaint of discrimination.

37. John (LNU) then told Hendrickson to wait inside the plane. Hendrickson could not get into the plane due to her disabled leg, so John (LNU) sent her home instead.

38. This was notice to John (LNU) of Hendrickson's disability and additional notice of it to Amazon.

39. The next day, Hendrickson developed a fever and reported it to her superiors. She was concerned of potentially contracting COVID-19.

40. Hendrickson was then sent to HR (and not the medical bay, for some reason).

41. Hendrickson was then sent home pending a negative COVID-19 test.

42. Hendrickson provided that negative test and returned to work on or about October 7, 2020.

43. Hendrickson then began her re-training for the tug and returned back to her regular job duties a few days after.

44. On or about October 24, 2020, Hendrickson was called to meet with HR representatives: a male (name unknown, 30s) and a female (late 20s) representative.

45. After Hendrickson reviewed what had happened again roughly one month prior, the male HR representative claimed her error to be a terminable offense.

46. Hendrickson pushed back noting her manager told her it was only a "coach-and-go" moment, meaning likely only a verbal warning.

47. Hendrickson then asked why she had been punished multiple for the same, minor error.

48. Hendrickson's employment was then terminated citing that issue.

49. Disparately, Amazon did not punish non-disabled employees multiple for minor issues (e.g. Andrea Downing, who had tug-driven a plane into a fuselage causing several million dollars in damage).

50. Amazon did not follow its progressive discipline policy when terminating Hendrickson's employment.

51. Amazon's refusal to follow its policy was an adverse employment action against Hendrickson.

52. Defendant's termination of Hendrickson was an adverse employment action against her.

53. Defendant's purported reason(s) for Hendrickson's termination was pretextual.

54. Defendant actually terminated Hendrickson's employment discriminatorily against her age, her disabilities, to interfere with her FMLA rights, in retaliation against her quarantine for the potential COVID-19 diagnosis, and/or in retaliation against her protected complaints.

55. As a result of the above, Hendrickson has suffered damages.

## COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.*

56. Hendrickson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

57. Hendrickson is 58 years old, and thus is in a protected class for her age.

58. R.C. § 4112 *et seq*. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

59. Defendant treated Hendrickson differently than other similarly situated employees based upon her age.

60. Defendant's termination of Hendrickson was an adverse employment action against her.

61. Defendant's purported reason(s) for Hendrickson's termination was pretextual.

62. Defendant actually terminated Hendrickson's employment due to her age.

63. Defendant violated R.C. § 4112 et seq. by terminating Hendrickson because of her age.

64. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Hendrickson differently from other similarly situated employees outside her protected class.

65. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Hendrickson's age.

66. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Hendrickson's age.

67. Hendrickson incurred emotional distress damages as a result of Defendant's conduct described herein.

68. As a direct and proximate result of Defendant's acts and omissions, Hendrickson has suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq.*

69. Hendrickson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

70. Hendrickson is in a protected class for her disabilities (described *supra*).

71. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disabilities.

72. Defendant treated Hendrickson differently than other similarly situated employees based upon her disability.

73. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Hendrickson differently from other similarly situated employees outside her protected class.

74. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Hendrickson's disability.

75. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Hendrickson's disability.

76. Hendrickson incurred emotional distress damages as a result of Defendant's conduct described herein.

77. As a direct and proximate result of Defendant's acts and omissions, Hendrickson has suffered and will continue to suffer damages.

## COUNT III: RETALIATION

78. Hendrickson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

79. As a result of the Defendant's discriminatory conduct described above, Hendrickson complained of the discrimination, harassment, and disparate treatment she was experiencing.

80. Subsequent to Hendrickson's complaints to management about harassment, bullying, and disparate treatment toward her, Defendant took adverse employment actions against Hendrickson, including, but not limited to, terminating her employment.

81. Defendant's actions were retaliatory in nature based on Hendrickson's opposition to the unlawful discriminatory conduct.

82. Pursuant to R.C. § 4112 et seq., it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

83. As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Hendrickson, she has suffered and will continue to suffer damages.

## COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

84. Hendrickson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

85. A clear public policy exists and is manifested in Ohio and federal statutes, including Governor DeWine's Stay-At-Home Order, the Family First Coronavirus Relief Act ("FFCRA"), R.C. § 4101.11 and/or § 4101.12, and/or administrative regulations, or in the common law, in favor of providing workers with a healthy and safe work environment,

and against terminating an employee based on complaints of unsafe working conditions caused by the COVID-19 pandemic and/or other causes.

86. A clear public policy exists and is manifested in Ohio and federal statutes, including Governor DeWine's Stay-At-Home Order, the FFCRA, R.C. § 4101.11 and/or § 4101.12, and/or administrative regulations, or in the common law, in favor of providing workers with a healthy and safe work environment, and against terminating an employee based on the employee's quarantine for potential exposure to COVID-19.

87. Hendrickson repeatedly made reports to Defendant about the unethical, unlawful, and/or policy-violating behavior that was going on there, including, but not limited to, unsafe working conditions caused by unsafe working conditions related to the coronavirus pandemic and other things.

88. Only days before her termination, Hendrickson was forced to quarantine pending a negative COVID-19 test.

89. Rather than allowing Hendrickson to return to work after her negative test without issue, Amazon immediately began looking for reasons to terminate her employment.

90. Defendant's termination of Hendrickson's employment jeopardizes these public policies by undermining the authority of Gubernatorial orders, federal relief policies, and state statutes.

91. Defendant's termination of Hendrickson's employment was motivated by Hendrickson's conduct related to these public policies because of the risk to her and to the public's health.

92. Defendant's purported reason for Hendrickson's termination was pretextual.

93. Defendant actually terminated Hendrickson's employment due to her use of COVID-19 quarantine time off.

94. Defendant's termination of Hendrickson jeopardizes these public policies.

95. Defendant's termination of Hendrickson was motivated by conduct related to these public policies.

96. Defendant had no overriding business justification for terminating Hendrickson.

97. As a direct and proximate result of Defendant's conduct, Hendrickson has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Hendrickson demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Hendrickson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Hendrickson's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

   /s/ Matthew Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH  45246
Phone: (216) 291-0244 x173

Fax:     (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Rose Hendrickson*

## **JURY DEMAND**

Plaintiff Rose Hendrickson demands a trial by jury by the maximum number of jurors permitted.

   /s/ Matthew Bruce    
Matthew G. Bruce (0083769)
